UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ANDREW GOGAN, JACK GOGAN, and JESSICA IRENE GOGAN,

    Plaintiffs,

v.                                                             Case No.:  2:24-cv-876-SPC-NPM

MICHAEL A. NAPIER, VINEYARDS COUNTRY CLUB, INC., PRO TREE FARMS, INC., and THE GUARDIAN LIFE INSURANCE COMPANY OF AMERICA

    Defendants.
_____/

# OPINION AND ORDER

Before the Court are Defendant The Guardian Life Insurance Company of America's Motion to Dismiss (Doc. 14); Plaintiffs Andrew, Jack, and Jessica Gogan's Motion to Remand (Doc. 28); and Plaintiffs' Motion for Jurisdictional Discovery and to Stay (Doc. 45).  The parties have responded (Docs. 27, 40, 49) and replied (Docs. 41, 61).  For the below reasons, the Court dismisses the complaint and denies remand without the need for additional jurisdictional discovery.

## Background

This case concerns competing claims to a decedent's home and the proceeds of her life insurance policy. The complaint alleges as follows.[1] The decedent, Debra Napier, owned a home in Naples. (Doc. 4 ¶ 11). Her husband, Defendant Michael Napier, tricked her into signing a quitclaim deed that listed them both as owners of the home. (*Id.* ¶¶ 11-15). The decedent wished that her home would pass to her three children but died before she could make that arrangement. (*Id.* ¶¶ 25–26). So her husband was left with the home.

The husband didn't just get the home. The decedent's employer, Defendants Vineyards Country Club, Inc. and Pro Tree Farms Inc., had offered a group life insurance policy to its employees. (*Id.* ¶¶ 30–31). Before she died, the decedent provided her employer a written notice designating her children as the beneficiaries. (*Id.* ¶ 32). But her employer failed to update her designation. (*Id.* ¶ 33). So when she died, the insurance company, Defendant Guardian, paid out the $100,000 benefits to her surviving husband. (*Id.* ¶ 41).

The three children sued in state court. They brought a fraud claim against the husband relating to his efforts to obtain the home. (*Id.* ¶¶ 18–27). They also brought two negligence claims, one against the employer and one

---

[1] The Court "accept[s] the allegations in the complaint as true and constru[es] them in the light most favorable to" Plaintiffs. *Belanger v. Salvation Army*, 556 F.3d 1153, 1155 (11th Cir. 2009).

2

against the insurance company, relating to the life insurance benefits. (*Id.* ¶¶ 28–43). They allege that the employer "had a duty and obligation to the Plaintiffs to keep Debra Napier's beneficiaries up to date and in full force and effect." (*Id.* ¶ 31). And they allege that the insurance company "had a duty to the Plaintiffs to verify employees' beneficiary designations and conduct its due diligence" and "had a duty to verify the distribution line in connection with Debra Napier's estate[.]" (*Id.* ¶ 39).

Guardian removed the action to federal court. (Doc. 1). It argues Plaintiffs' claims related to the life insurance proceeds are completely preempted by the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq* and therefore removable under 28 U.S.C. § 1441(c)(1). (*Id.*). Guardian has also moved to dismiss on similar grounds. (Doc. 14). In response, Plaintiffs move to remand (Doc. 28) or to stay ruling on the motion to dismiss and allow jurisdictional discovery (Doc. 45). All of the motions and responses turn on two competing arguments: Guardian argues preemption, and Plaintiffs argue that this determination turns on issues of fact that cannot be resolved at this stage. The Court agrees with Guardian that ERISA completely preempts Plaintiffs' negligence claims and supports removal and here's why.

## Analysis

Ordinarily, the well-pleaded complaint rule prevents a federal defense—such as preemption—from supplying subject-matter jurisdiction and supporting removal. *Aetna Health Inc. v. Davila*, 542 U.S. 200, 207 (2004). But ERISA creates two kinds of preemption: complete and conflict. *Connecticut State Dental Ass'n v. Anthem Health Plans, Inc.*, 591 F.3d 1337, 1343 (11th Cir. 2009). Complete preemption is not limited by the well-pleaded complaint rule. *Davila*, 542 U.S. at 209. As the Supreme Court has explained, "the ERISA civil enforcement mechanism is one of those provisions with such 'extraordinary pre-emptive power' that it 'converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" *Id.* (quoting *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 65 (1987)).

The Court turns first to the issue of complete preemption. "The removing party bears the burden of demonstrating complete preemption and, where jurisdiction is not absolutely clear, the Eleventh Circuit favors remand." *Lee Mem'l Health Sys. v. Blue Cross & Blue Shield of Fla., Inc.*, 248 F. Supp. 3d 1304, 1310 (M.D. Fla. 2017). To determine whether Guardian has met its burden, the Court "may consider the evidence in and outside the petition for removal and motion to remand." *Id.* And, even at the motion to dismiss stage, the Court considers the pleadings "and exhibits attached thereto" along with

4

any extrinsic document if it is "central to the plaintiff's claim" and "its authenticity is not challenged." *Griffin v. Verizon Commc'ns Inc.*, 746 F. App'x 873, 876 (11th Cir. 2018) (citations omitted). Here, the insurance policy is attached to the complaint as an exhibit (Doc. 4-1), and those filings sufficiently establish that ERISA preempts Plaintiffs' claims.

The Court applies a two-step test to determine whether ERISA completely preempts Plaintiffs' negligence claims. *See Davila*, 542 U.S. at 210. The Court must ask "(1) whether the plaintiff could have brought its claims under § 502(a); and (2) whether no other legal duty supports the plaintiff's claims." *Connecticut State Dental Ass'n*, 591 F.3d at 1345.

To satisfy step one, "(1) the plaintiff's claim must fall within the scope of ERISA; and (2) the plaintiff must have standing to sue under ERISA." *Id.* at 1350. For a claim to fall within the scope of ERISA, there must be an ERISA plan. *Garcon v. United Mut. of Omaha Ins.*, 779 F. App'x 595, 597 (11th Cir. 2019). An ERISA plan exists when "from the surrounding circumstances a reasonable person could ascertain the intended benefits, beneficiaries, source of financing, and procedures for receiving benefits." *Id.*

Under ERISA, an employee benefit plan may be a welfare benefit plan, a pension benefit plan, or both. *See* 29 U.S.C. § 1002(3). Guardian claims that a welfare benefit plan is at issue. (Doc. 1 at 4). An employee welfare benefit plan is defined as any (1) "plan, fund, or program," (2) "established or

5

maintained," (3) "by an employer," (4) "for the purpose of providing for its participants or their beneficiaries," (5) "though the purchase of insurance or otherwise . . . benefits in the event of . . . death" (or other enumerated benefits). 29 U.S.C. § 1002(1). At first blush, the life insurance arrangement here fits the bill.

A closer look confirms that this case concerns a welfare benefit plan. Because this case involves a "group or group-type insurance program offered by an insurer to employees," the Court starts with the safe harbor regulation. *See* 29 C.F.R. § 2510.3-1(j); *Moorman v. UnumProvident Corp.*, 464 F.3d 1260, 1267 (11th Cir. 2006) ("safe harbor analysis is usually conducted before considering whether the plan is governed by ERISA using the more factor-intensive analysis under 29 U.S.C. § 1002(1)"). That regulation removes such programs from the definition of "employee welfare benefit plan" if certain conditions are met. *Id.* One of those conditions is that the "sole functions of the employer . . . with respect to the program are, without endorsing the program, to permit the insurer to publicize the program to employees or members, to collect premiums through payroll deductions or dues checkoffs and to remit them to the insurer[.]" *Id.*

The complaint alleges that Vineyards Country Club and Pro Tree Farms employed the decedent. (Doc. 4 ¶¶ 6–7). The attached policy provides that the employer Vineyards Country Club is the group policyholder. (Doc. 4-1 at 3).

6

The policy provides that the employer may ask Guardian to include an associated company under the policy. (*Id*. at 16). The policy describes the employer's function as much more involved than simply publicizing the insurance and collecting and remitting premiums. Under the policy, the employer receives notice of variation employee elections, may renew and cancel the policy, may request an amendment to the policy, must deliver certificates of coverage to each insured employee, must keep certain records of the insured employees and forward that information to the insurer, and may establish a service waiting period. (*Id*. at 6–20). Relevant here, the policy provides that an employee can change her beneficiary by giving the employer written notice. (*Id*. at 36). But such a change will not take effect until the employer gives the employee written confirmation. (*Id*.).

The complaint's allegations rely on the fact that the employer has duties under the policy. Plaintiffs assert that the employer "had a duty and obligation to the Plaintiffs to keep Debra Napier's beneficiaries up to date and in full force and effect." (Doc. 4 ¶ 31).

The policy provides (and Plaintiffs acknowledge in their complaint) that the employer does much more than just permit Guardian to publicize the program and collect premiums and remit them. And performing any other function renders the safe harbor regulation inapplicable. *See Moorman*, 464

F.3d at 1268. Accordingly, the safe harbor regulation does not prevent this plan from being an employee welfare benefit plan.

And the life insurance arrangement here otherwise satisfies ERISA's employee welfare benefit plan definition. There is a plan. A reasonable person could ascertain the intended benefits (life insurance benefits), the beneficiaries (certain employees), the source of financing (participant premiums), and the procedure for receiving benefits (the policy's life insurance claims procedure).[2] (Docs. 4-1 at 2–15, 14-2 at 46).

The employer also established or maintained the plan. A plan is established "when there has been some degree of implementation by the employer going beyond a mere intent to confer a benefit." *Butero*, 174 F.3d at 1214. The same reasons that render the safe harbor regulation inapplicable show that the employer established or maintained the plan. This is not a case where an employer had only draft plans. *See Whitt v. Sherman Int'l Corp.*, 147 F.3d 1325, 1331 (11th Cir. 1998) (finding no ERISA plan established or maintained when the employer had "either numerous conflicting draft plans or, at best, a single *draft* plan that was still subject to change"). Indeed, as the

---

[2] The claims procedure for accident and health benefits is included in the policy Plaintiffs attached to their complaint. (Doc. 4-1 at 21). The claims procedure for life insurance claims is not. Rather, it is found in a policy booklet which Defendant Guardian has provided to the Court. (Doc. 14-2 at 46). This is the only document the Court considers in this Order that is not attached to the complaint. The document is central to Plaintiffs' claims and its authenticity is not disputed. Moreover, the Court can consider this document to resolve questions about its subject-matter jurisdiction and whether to remand.

complaint alleges and its attachments demonstrate, $100,000 in death benefits were in fact distributed to Napier. (Doc. 4-4).

Finally, it is indisputable that the plan was created for purpose of providing death benefits to the participant's beneficiaries.

Plaintiffs also have standing as they assert that the decedent designated them as her beneficiaries under the policy. (Doc. 4 ¶ 32). Plaintiffs' claims, no matter how they are labeled, are essentially claims "by . . . beneficiar[ies] . . . to recover benefits due to [them] under the terms of [the] plan, to enforce [their] rights under the terms of the plan, or to clarify [their] rights to future benefits under the terms of the plan." 29 U.S.C. § 1132. And that this case "involves a dispute over a change of beneficiary form in no way defeats ERISA preemption." *Unum Life Ins. Co. of Am. v. Burton*, No. 8:05CV1423T23MAP, 2006 WL 69068, at *1 (M.D. Fla. Jan. 11, 2006); *see also Brown v. Connecticut Gen. Life Ins.*, 934 F.2d 1193, 1196 (11th Cir. 1991) (finding completely preempted a "claim for an order declaring [the plaintiff] the rightful beneficiary and requiring [the defendant] to pay her the benefits of the policy"); *Brown v. Cemex, Inc.*, No. CIV.A. 205CV552C, 2005 WL 3133778, at *2 (S.D. Ala. Nov. 22, 2005) (same).

Because Plaintiffs' claims fall within the scope of ERISA, and they have standing to sue, they could have brought their claims under § 502(a). Step one

of the test to determine whether ERISA completely preempts Plaintiffs' negligence claims has been satisfied.

The Court next turns to step two of the test. Under step two, the Court must determine "whether no other legal duty supports the plaintiff's claims." *Connecticut State Dental Ass'n*, 591 F.3d at 1345. Plaintiffs frame their claims as negligence but also "expressly tether" them to Defendants' "obligations under the ERISA insurance plan." *Gables Ins. Recovery, Inc. v. Blue Cross & Blue Shield of Fla., Inc.*, 813 F.3d 1333, 1338 (11th Cir. 2015); (Doc. 4 ¶ 31) ("Pursuant to the policy" the employer "had a duty and obligation"); (*Id.* ¶¶ 38–41) ("Guardian issued a group insurance policy to Vineyards. . . . As the insurance company, Guardian has a duty to the Plaintiffs[.]"). So Plaintiffs' claims directly turn on the implementation of the ERISA-governed plan and do not arise out of an independent duty. *Id.* (holding claims that "necessarily depend upon a breach of the ERISA plan . . . do not arise out of a separate duty independent of the plan"). Step two is satisfied.

In short, Plaintiffs' claims satisfy both steps of the complete preemption test. Because their claims could have been brought under § 502(a) and are supported by no other legal duty, they are completely preempted by ERISA.

Next up, conflict preemption. Having established the Court's jurisdiction through complete preemption, Guardian argues the Court should dismiss the negligence claims as conflict preempted. (Doc. 14). In addition to

10

complete preemption, ERISA creates conflict preemption (also referred to as defensive preemption). Conflict preemption is a "substantive defense to preempted state law claims" and "arises from ERISA's express preemption provision, § 514(a), which preempts any state law claim that 'relates to' an ERISA plan." *Connecticut State Dental Ass'n*, 591 F.3d at 1344. Conflict preemption is broader than complete preemption. So "if the plaintiff's claims are completely preempted, then they are also defensively preempted." *Cotton v. Massachusetts Mut. Life Ins.*, 402 F.3d 1267, 1281 (11th Cir. 2005) (cleaned up).

Because Plaintiffs' negligence claims are completely preempted, they are conflict preempted, too.[3] The Court dismisses the negligence claims and grants Plaintiffs' request for leave to amend to re-plead under ERISA. (Doc. 27 at 10). Plaintiffs should be mindful of Defendant Guardians' other dismissal arguments when amending their complaint. (Doc. 14 at 14-16).

---

[3] Aside from allegations about negligent plan administration, Plaintiffs also allege that Guardian "failed to verify the distribution line in connection with Debra Napier's estate[.]" (Doc. 4 ¶ 40). Whether this claim is *completely* preempted is unclear. Defendant Guardian relies on *Egelhoff* to argue this claim is preempted, without distinguishing between complete and conflict preemption. *See Egelhoff v. Egelhoff*, 532 U.S. 141 (2001) (holding a Washington statute that revoked a spouse's designation as a beneficiary upon divorce preempted by ERISA). But that opinion seems to concern conflict preemption, not complete preemption. *Id*. at 146 (citing § 514(a)).

Even if ERISA does not completely preempt this claim, however, the Court would have supplemental jurisdiction over it. *See Jones v. LMR Int'l, Inc.*, 457 F.3d 1174, 1179 (11th Cir. 2006) (recognizing that the district court had jurisdiction to dismiss claims as conflict preempted because it had supplemental jurisdiction derived from other completely preempted claims). So the Court can and does dismiss that claim as it "relates to" the ERISA plan and is conflict preempted.

11

Plaintiffs request that the Court stay ruling on these issues and order jurisdictional discovery. (Doc. 45). But, Plaintiffs' discovery motion is facially deficient. Plaintiffs simply throw their hands up and demand discovery to rebut Guardian's arguments. Their motion does not identify what specific discovery they seek or what issues that discovery will illuminate. This is insufficient. *See Instabook Corp. v. Instantpublisher.com*, 469 F. Supp. 2d 1120, 1127 (M.D. Fla. 2006) ("Plaintiff has only generally requested [jurisdictional] discovery, without explaining how [jurisdictional] discovery would bolster its contentions, and Plaintiff has not persuaded the Court that such discovery is warranted in this case.").

"The Court may order jurisdictional discovery to determine if subject matter jurisdiction exists when a court's jurisdiction is genuinely in dispute." *Levin v. Amica Mut. Ins.*, No. 2:22-CV-687-SPC-KCD, 2022 WL 17416500, at *1 (M.D. Fla. Nov. 18, 2022) (cleaned up). This decision turns on whether the Court can "resolve the issue without additional evidence." *Id.* As the Court's analysis demonstrates, additional evidence is unnecessary. Thus, the Court denies Plaintiffs' motion to stay and for jurisdictional discovery.

One final loose end remains. Guardian's notice of removal did not provide a jurisdictional basis over the claim against Napier. Remember, that claim involved Napier's allegedly fraudulent actions in procuring a quitclaim deed to a home. Because the claim is seemingly unrelated to the ERISA-

12

preempted life insurance claims, the Court doubts its jurisdiction. Under 28 U.S.C. § 1441(c), the Court must sever and remand claims joined but not within the Court's original or supplemental jurisdiction. Before Plaintiffs amend their complaint, the Court orders supplemental briefing on this issue.

Accordingly, it is now

**ORDERED:**

1. Plaintiffs' Motion to Remand (Doc. 28) is **DENIED**.

2. Guardian's Motion to Dismiss (Doc. 14) is **GRANTED in part.**

3. **On or before February 27, 2025**, Guardian, as the party invoking this Court's jurisdiction, must show cause why the Court should not sever and remand the claim brought against Napier.

**DONE** and **ORDERED** in Fort Myers, Florida on February 20, 2025.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies: All Parties of Record